UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOWELL FINLEY, | CASE NO. CV-F-04-5508 REC LJO P |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| v. | |
| GAIL LEWIS, et al., | (Doc. 38) |
| Defendants. | |

I.  Findings and Recommendations Following Screening of Amended Complaint

   A.   Procedural History

This is a civil rights action filed by plaintiff Jowell Finley ("plaintiff"), a state prisoner proceeding pro se, and is proceeding against defendants Lewis, Taylor, Auten, Ruth, Buehler, Gonzales, and Herrera ("defendants"). This action was removed from Fresno County Superior Court by defendants Lewis, Taylor, Auten, Ruth, and Buehler on March 30, 2004.[1]  On December 10, 2004, the court granted in part and denied in part defendants' motions to dismiss and ordered plaintiff to file an amended complaint within thirty days.  Plaintiff filed an amended complaint on December 27, 2004.

On March 21, 2005, the court issued an order finding that plaintiff's amended complaint contains a cognizable claim for relief against defendants Gonzales and Auten for violation of the Eighth Amendment but that the amended complaint does not contain any other claims upon which

---

[1] Defendants Gonzales and Herrera subsequently made an appearance in the action.

1

relief may be granted under section 1983. The court ordered plaintiff to either file a second amended complaint or notify the court that he is willing to proceed only on his claim against defendants Gonzales and Auten. On April 11, 2005, plaintiff notified the court that he does not wish to amend and is willing to proceed only against defendants Gonzales and Auten. Based on plaintiff's notice, this Findings and Recommendations now issues.

B.  Screening Requirement

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

C.  Plaintiff's Claims

    1.  Claims Against Defendants Lewis, Taylor, Auten, Ruth, Buehler, Gonzales, and Herrera[2]

        a.  Summary of Plaintiff's Allegations

In his amended complaint, plaintiff alleges that following a disciplinary hearing at which his cellmate, inmate McFadden, was found guilty of possessing manufactured alcohol, McFadden blamed plaintiff for causing their cell to be searched and threatened to harm plaintiff if plaintiff did

---

[2] Identified as Count One in the amended complaint.

not get another cell. On June 22, 2003, plaintiff informed defendant Gonzales about threats made against him by his McFadden. Plaintiff also informed defendant Buehler via letter, who failed to take any action. Plaintiff then tried to get a cell change on his own but was unsuccessful.

On July 5, 2003, McFadden threatened to hit plaintiff with a large canned good he had in his hand, threatened to kill plaintiff, and told plaintiff that if plaintiff did not get out of their cell, they were going to fight and McFadden was going to use more than the canned good. On July 6, 2003, plaintiff informed defendants Gonzales and Auten that his cellmate came at him with a weapon, and threatened to kill him, and that plaintiff was afraid and took the threats seriously due to McFadden's long history of violence. Defendants said they would take care of the situation but did not take any action and then left for the day.

Plaintiff then informed correctional officers Lee and Green of the situation with his cellmate. Plaintiff was escorted to the program office and interviewed by defendant Herrera. After plaintiff's interview, McFadden was brought to the office and interviewed. Following McFadden's interview, plaintiff was brought back in for a second interview. Defendant Herrera told plaintiff that McFadden admitted they were having problems and that defendant Herrera was going to move plaintiff to unit one on the same yard. Plaintiff stated that he did not approve of the course of action and that McFadden should be moved to administrative segregation pursuant to Title 15 regulations. With defendant Taylor's approval, plaintiff was then moved to unit one.

Plaintiff alleges that on July 7, 2003, he filed complaints with defendants Buehler and Lewis.

Also on July 7, 2003, defendant Ruth ordered plaintiff to talk to inmate Clayton in cell 119 to see if they could be celled together. Inmate Clayton refused and told plaintiff that he was on single cell status because of his mental illness of paranoia and auditory hallucinations. Plaintiff informed defendant Ruth, who said that he had forgotten inmate Clayton's condition. Plaintiff returned to his cell and defendant Ruth approached later, informing plaintiff that he needed to find someone to cell with. When plaintiff questioned Ruth about why, if there were all of these cells with one inmate in them, plaintiff was not just assigned a cellmate in the first place. In the presence of other inmates, defendant Ruth yelled at plaintiff that it was because he had told that his cellmate was going to kill him.

1   Plaintiff was subsequently summoned from his cell. Defendant Ruth told plaintiff and the
2 other inmates who were present that they had to get together and pair up for cell moves, which would
3 occur after the evening meal. Plaintiff and inmate Swan agreed to be celled together.
4   After plaintiff moved cells following the evening meal, inmate Swan informed plaintiff that
5 he learned during the meal that other inmates had overhead defendant Ruth say plaintiff snitched on
6 his former cellmate, and Swan no longer wanted to be cellmates with plaintiff. Plaintiff informed
7 defendant Ruth of the situation but defendant told him it was too bad and he was staying in the cell.
8 Defendant Ruth denied plaintiff's request to speak with a sergeant but plaintiff was later told he
9 could move back to his old cell, which he did that night. Plaintiff alleges that for the next four days,
10 he was on lock-down status as punishment for refusing a cell move, and defendant Ruth filed a false
11 rules violation report against him. While on lock-down, plaintiff tried to talk to the program
12 sergeant, but defendant Herrera refused to speak to him.
13   During the hearing on the rules violation report issued by defendant Ruth, the hearing
14 lieutenant reduced the rules violation of a custodial counseling chrono.
15   Soon after the hearing, defendant Ruth again submitted paperwork to cell plaintiff with
16 inmate Clayton. After inmate Clayton was informed that he was going to get a cellmate after the
17 evening meal, Clayton told defendants Herrera and Taylor that if he got a cellmate, he would kill the
18 cellmate and then himself. Defendants placed Clayton on suicide watch due to his statement.
19 Plaintiff was then forced to move into the cell where Clayton had been and remained alone in the
20 cell until July 31, 2003. Plaintiff was warned that if he refused to take Clayton as a cellmate, he
21 would get written up. Plaintiff alleges that once Clayton returned, he was forced to cell with him
22 until one night when Clayton smeared excrement on the walls of the cell while plaintiff was out
23 taking a shower. Plaintiff alleges that complaints were filed with defendants Lewis and Buehler and
24 the appeals office, but none were responded to.
25          b.      Eighth Amendment
26   Plaintiff alleges that defendants violated his rights under the Eight Amendment. To
27 constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions
28 must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337,

4

347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 835. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Farmer, 511 U.S. at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer, 511 U.S. at 835; Frost v. Agnos, 152 F.3d at 1128; see also Daniels v. Williams, 474 U.S. 327, 330-32 (1986).

Plaintiff's allegation that he informed defendants Gonzales and Auten that plaintiff's cellmate had threatened plaintiff with a weapon and said that he would kill plaintiff, and that defendants Gonzales and Auten said they would take care of the situation but failed to do anything is sufficient to state a claim under the Eighth Amendment. Fed. R. Civ. Pro. 8(a); Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512-15 (2002); Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004); Jackson v. Carey, 353 F.3d 750, 754 (9th Cir. 2003); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125-26 (9th Cir. 2002).

Plaintiff's allegation that after interviewing plaintiff twice and inmate McFadden once concerning the situation between them, defendant Herrera moved plaintiff to a different unit instead of placing inmate McFadden in administrative segregation does not give rise to a claim for relief

under section 1983 against defendant Herrera for violation of the Eighth Amendment. Likewise, the allegations that the unit officer told plaintiff that defendant Herrera did not want to speak with him, and that defendants Herrera and Taylor placed inmate Clayton on suicide watch after he informed them that if he got a cellmate, he would kill the cellmate and then kill himself do not give rise to a claim for relief under the Eighth Amendment against defendant Herrera or defendant Taylor.

Plaintiff's allegation that defendant Ruth yelled, "Because you told your cellie was going to kill you!" within earshot of several other inmates is insufficient to rise to the level of an Eighth Amendment violation. "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted). Defendant Ruth's statement simply does not support an Eighth Amendment claim. Plaintiff's other allegations against defendant Ruth are likewise insufficient to support an Eighth Amendment claim. The allegation that defendant Ruth gave plaintiff a false write-up does not rise to the level of an Eighth Amendment violation, and plaintiff has alleged no facts that support a claim that at the time inmate Clayton was celled with plaintiff following Clayton's release from suicide watch, he posed a substantial risk to plaintiff's safety and that defendant Ruth knew of and disregarded this risk. Farmer, 511 U.S. at 837

Finally, plaintiff's allegations that he wrote defendants Warden Lewis and Captain Buehler but they failed to respond is insufficient to give rise to a claim for relief under section 1983. Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 for supervisory liability, plaintiff must allege some facts indicating that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the

6

violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993). Plaintiff's conclusory allegations are insufficient to state a claim for violation of the Eighth Amendment based on a theory of supervisory liability.

        c.      Due Process

            1)      Procedural

Plaintiff alleges that defendants violated his rights under the Fourteenth Amendment. (Amend. Comp., p. 22 ¶ 3.) To the extent that plaintiff is attempting to pursue a due process claim, such a claim fails. The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Plaintiff has not alleged any facts that would support a claim that he was deprived of a protected interest without procedural due process.

            2)      Substantive

"To establish a violation of substantive due process . . . , a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), *cert. denied*, 117 S. Ct. 1845 (1997); County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998). Plaintiff has not alleged any facts that would support a claim that his rights under the substantive component of the Due Process Clause were violated. The Eighth Amendment provides the explicit textual source of protection for the events complained of.

          d.      Equal Protection

Plaintiff alleges that his right to equal protection was violated. Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that defendants acted with intentional discrimination against plaintiff or against a class of inmates which included plaintiff. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren, 152 F.3d at 1194.

Although plaintiff alleges that his right to equal protection was violated, plaintiff has not alleged any facts that support a claim for relief under the Equal Protection Clause, and plaintiff's citation to Exhibit B-1 does not support such a claim. (Amend. Comp., p. 23 ¶ 5.)

          d.      Compensatory Damages

Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." The physical injury "need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627-29 (9th Cir. 2002) (allegations of severe and lasting back and leg pain, a painful canker sore, and unspecified injuries sustained in a fight not more than de minimis). The physical injury requirement applies only to claims for mental or emotional injuries and does not bar claims for compensatory[3], nominal, or punitive damages. Id. at 630.

---

[3] Compensatory damages are not available for the mere deprivation of a constitutional right. See Carey v. Piphus, 435 U.S. 247, 264-65 (1978). Rather, the plaintiff must have sustained an actual injury in order to obtain compensatory damages. Id.

8

Plaintiff has not alleged the existence of any physical injury. Accordingly, to the extent that plaintiff is seeking damages based on mental or emotional injuries, such claims are barred by section 1997e(e).

### 2. Claims Against Defendants Corley, Matthews, Real, and Yates[4,5]

Plaintiff filed this action on January 23, 2004. In his amended complaint, plaintiff added claims for relief against defendants Corley, Matthews, Real, and Yates. The claims against these defendants accrued in March of 2004.

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion must occur *prior* to filing suit. McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). The section 1997e(a) exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 435 U.S. 516, 532 (2002), and "[a]ll 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524 (citing to Booth v. Churner, 532 U.S. 731, 739 n.5 (2001)). Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated. Booth, 532 U.S. at 741.

In light of section 1997e(a), plaintiff may not add new and unrelated claims that arose after this suit was filed. In a "conflict between Federal Rule of Civil Procedure 15 and the PLRA, the rule would have to yield to the later-enacted statute to the extent of the conflict." Harris v. Garner, 216 F.3d 970, 982 (11th Cir. 2000). Rule 15 "does not and cannot overrule a substantive requirement or restriction contained in a statute (especially a subsequently enacted one)." Id. at 983. Allowing

---

[4] Identified as Count Two in the amended complaint and located as Exhibit G.

[5] On April 28, 2005, Judge Coyle denied plaintiff's motion for reconsideration of the court's earlier finding that plaintiff was not entitled to proceed with these claims in this action because they were not exhausted when the suit was filed. (Docs. 41, 43, 44.)

9

plaintiff to pursue the claims he added in his amended complaint would allow plaintiff to thwart the mandate of section 1997e(a), which requires that claim exhaustion occur prior to filing suit and not during the pendency of the suit. McKinney, 311 F.3d at 1199-1201.

### D.     Conclusion

The court finds that plaintiff's amended complaint contains a cognizable claim for relief against defendants Gonzales and Auten for violation of the Eighth Amendment. However, the court finds that plaintiff's amended complaint does not contain any other claims upon which relief may be granted under section 1983. Plaintiff was provided with the opportunity to file a second amended complaint but opted to proceed only on his claim against defendants Gonzales and Auten.

Accordingly, it is HEREBY RECOMMENDED that:

1. This action proceed on plaintiff's amended complaint, filed December 27, 2004, against defendants Gonzales and Auten for failing to protect plaintiff, in violation of the Eighth Amendment;

2. Plaintiff's Eighth Amendment claims against defendants Herrera, Taylor, Ruth, Lewis, and Buehler be dismissed, with prejudice, for failure to state a claim upon which relief may be granted;

3. Plaintiff's due process and equal protection claims be dismissed, with prejudice, for failure to state a claim upon which relief may be granted;

4. Plaintiff's claim(s) for mental or emotional injuries be dismissed, with prejudice, pursuant to 42 U.S.C. § 1997e(e);

5. Plaintiff's claims against defendants Corley, Matthews, Real, and Yates be dismissed pursuant to 42 U.S.C. § 1997e(a), without prejudice, on the ground that the claims were unexhausted at the time this suit was filed; and

6. Defendants Herrera, Taylor, Ruth, Lewis, Buehler Corley, Matthews, Real, and Yates be dismissed from this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written

1  objections with the court.  The document should be captioned "Objections to Magistrate Judge's
2  Findings and Recommendations."  The parties are advised that failure to file objections within the
3  specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d
4  1153 (9th Cir. 1991).

6  IT IS SO ORDERED.

7  **Dated:    May 16, 2005**                              <u>      /s/ Lawrence J. O'Neill      </u>
   b9ed48                                                UNITED STATES MAGISTRATE JUDGE